# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| **WYOMING TECHNOLOGY LICENSING, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**APPLE INC.**<br><br>Defendant. | **CASE NO. 2:24-cv-128**<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Wyoming Technology Licensing, LLC ("Plaintiff" and/or "WTL") files this Complaint against Apple Inc. ("Apple" or "Defendant") for infringement of United States Patent No. 8,521,766 (hereinafter "the '766 Patent").

## PARTIES

1.      Plaintiff is a Wyoming limited liability company having an address at 1712 Pioneer Ave., Ste 500, Cheyenne, WY 82001.

2.      On information and belief, Apple is a California corporation with its principal place of business at 1 Infinite Loop, Cupertino, California 95014. Apple may be served with process through its registered agent CT Corporation System, located at 1999 Bryan St., Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, 35 U.S.C. § 271 et

seq.  Plaintiff is seeking damages, as well as attorney fees and costs.

4.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 (Federal Question) and 1338(a) (Patents).

5.      This Court has personal jurisdiction over Apple. Apple has continuous and systematic business contacts with the state of Texas. Apple, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), conducts its business extensively throughout Texas, by shipping, distributing, making, using, offering for sale, selling, and advertising (including the provision of interactive web pages) its products and services in the state of Texas and the Eastern District of Texas. Apple, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed infringing products and services into this district and into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in this district.

6.      Apple has offered and sold, and continues to offer and sell, these infringing products and services in this District. Apple and its customers also commit additional acts of direct infringement in this District with respect to the asserted patent through their infringing use of the accused products, including Apple's servers, in this District, including when Apple and its customers put the accused products into service and receive a benefit, and Apple is liable for these additional acts of direct infringement and indirect infringement in this District. Apple has committed acts of infringement, both direct and indirect, in this District with respect to the asserted patent.

7.      Venue is proper as Apple files lawsuits in this District on a regular basis, including against competitor Ericsson. *See* Figure 1.

6.      This Court has personal jurisdiction over Apple because Apple availed itself of the jurisdiction of this Court and engaged in acts giving rise to this controversy in this district, including selling Apple products into this District.

7.      Apple consented to venue in this Court by filing its Complaint against Ericsson in this District and thus venue for Ericsson's Counterclaim is proper in this district.

*Figure 1* – Screen excerpts from Apple Inc. v. Ericsson, Case 2:21-cv-00460-JRG, Dkt. 55 (E.D. Tex. April 6, 2022) (Ericsson's Answer to Apple's Complaint filed under seal without a public version being filed with the Court for the Public).

## **PATENT-IN-SUIT**

8.      Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent No. 8,521,766  (hereinafter "'766 Patent").  The '766 Patent is attached as Exhibit A.

9.      The '766 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

10.      Plaintiff possesses all rights of recovery under the '766 Patent, including the exclusive right to recover for past, present and future infringement.

11.      The priority date of the '766 Patent is at least as early November 12, 2007. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

12.      Plaintiff alleges infringement on the part of Defendant of the '766 Patent.

13.      The '766 Patent relates generally to systems and methods for providing information discovery and retrieval. In one embodiment, the invention includes a system for

providing information discovery and retrieval, the system including a processor module, the processor module configurable to performing the steps of receiving an information request from a consumer device over a communications network; decoding the information request; discovering information using the decoded information request; preparing instructions for accessing the information; and communicating the prepared instructions to the consumer device, wherein the consumer device is configurable to retrieving the information for presentation using the prepared instructions. *See* Abstract, '766 Patent.

14.     As noted, the claims of the '766 Patent have priority to at least November 12, 2008.  The deficiencies in the state of the art as of the Date of Invention were highly problematic. Online content includes most of the published music catalog, millions of music videos, TV programs, feature films, and literally billions of short home videos. This media is available through a large number of online portals and web sites that act as content aggregators. However, each aggregator has its own rules, interface, and business model. As a result, a media consumer is forced to manage a complex set of differing interfaces and transaction decisions in order to access desired media and experience it on a device of their choosing. In contrast, an average TV viewer or radio listener uses a single simple interface to locate and select entertainment. Accordingly, it is currently challenging for a media consumer to quickly and intuitively search for, locate, retrieve, and display or play desired media. Online portals, websites, and other software applications present media using the traditional desktop file and folder or list paradigm thereby placing the burden on the media consumer to locate and identify desired media. A media consumer is not able to merely make a request for media and have that media delivered, but instead must expend effort to locate the desired media, which may or may not be embedded within a list of other presented media. This presentation method has become increasingly problematic as available media has exploded and device displays have

become smaller. Accordingly, it is currently not possible for a media consumer to intuitively retrieve desired media by making intuitive requests. *See* '766 Patent at 1:22-67.

15.     The traditional computer keyboard has been established as an accepted substitute for natural language communication with a computer. Indeed, as computer devices have decreased in size, much creativity has been expended to similarly reduce the size of the keyboard. While natural language speech would be an easier and more instinctive way to communicate with computers, especially those that are smaller in size, current speech recognition systems are notoriously unreliable and limited in word-scope. The speech recognition systems that offer the best results, while still very limited, require much more processing power than is available on a consumer computer or device. Accordingly, current consumer speech recognition systems do not serve as a viable substitute for the keyboard. *See* '766 Patent at 2:1-22.

16.     The claims of the '766 Patent overcome deficiencies existing in the art as of the date of invention, and comprise non-conventional approaches that transform the inventions as claimed into substantially more than mere abstract ideas.

17.     The claims of the '766 Patent are not drawn to laws of nature, natural phenomena, or abstract ideas.  The specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention.

18.     Further, the claims of the '766 Patent contain inventive concepts which transform the underlying non-abstract aspects of the claims into patent-eligible subject matter.

19.     The '766 Patent was examined by Primary United States Patent Examiner Le Uyen.  During the examination of the '766 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 707/769; 704/251; and 704/275.

20.     After conducting a search for prior art during the examination of the '766 Patent,

the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the search: US 6,985,852; US 7,203,645; 7,623,823; US 2004/0138877; US 2004/0253436; US 2006/0271370; US 2007/0130580; US 2007/0198255; US 2007/0294084; US 2008/0015848; US 2008/0027723; US 2008/0091426; US 2008/0255844; US 2009/0192640; US 2009/0319957; and Fink, Social and Interactive Television Applications, 2006, 10 pages.

21.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '766 Patent to issue.  In so doing, it is presumed that Examiner Uyen used his knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Uyen had experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).  In view of the foregoing, the claims of the '766 Patent are novel and non-obvious, including over all non-cited art which is merely cumulative with the referenced and cited prior art.  Likewise, the claims of the '766 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by Examiner Uyen.

22.     The claims of the '766 Patent were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration.  *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011)

("[A]n expired patent is not viewed as having 'never existed.'  Much to the contrary, a patent does have value beyond its expiration date.  For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

23.     The nominal expiration date for the claims of the '766 Patent is no earlier than November 12, 2028.

## ACCUSED INSTRUMENTALITIES

24.     Upon information and belief, Defendant sells, advertises, offers for sale, uses, or otherwise provides at least an intelligent voice assistant system ("Siri") that receives voice commands from a user through a mobile device (such as, for example, an iPhone or iPad) or a desktop or laptop computer (such as, for example, a MacBook Pro), and retrieves information related to the voice command (the "Accused Instrumentalities").

## COUNT I
## (INFRINGEMENT OF UNITED STATES PATENT NO. 8,521,766)

25.     Plaintiff refers to and incorporates the allegations in Paragraphs 1 - 24, the same as if set forth herein.

26.     This cause of action arises under the patent laws of the United States and, in particular under 35 U.S.C. §§ 271, *et seq*.

27.     Defendant has knowledge of its infringement of the '766 Patent, at least as of the service of the present complaint.

28.     The '766 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

29.     Upon information and belief, Defendant has infringed and continues to infringe one or more claims, including at least Claims 1-3, 5-10, 13, 29 and 30, of the '766 Patent by

manufacturing, using, importing, selling, offering for sale, and/or providing (as identified in the Claim Chart attached hereto as Exhibit B) the Accused Instrumentalities that identify and provide information about drugs, and which infringe at least Claims 1-3, 5-10, 13, 29 and 30 of the '766 Patent. Defendant has infringed and continues to infringe the '766 Patent either directly or through acts of contributory infringement or inducement in violation of 35 U.S.C. § 271.

31.     Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, the exemplary '766 Patent Claims, by having its employees internally test and use these exemplary Accused Instrumentalities.

32.     The service of this Complaint, in conjunction with the attached claim chart and references cited, constitutes actual knowledge of infringement as alleged here.

33.     Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe the '766 Patent. On information and belief, Defendant has also continued to sell the exemplary Accused Instrumentalities and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes the '766 Patent. See Exhibit B (extensively referencing these materials to demonstrate how they direct end users to commit patent infringement).

34.     At least since being served by this Complaint and corresponding claim chart, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '766 Patent, literally or by the doctrine of equivalents, by selling exemplary Accused Instrumentalities to their customers for use in end-user products in a manner that infringes one or more claims of the '766 Patent.

35.     Exhibit B includes at least one chart comparing the exemplary '766 Patent Claims

to the exemplary Accused Instrumentalities. As set forth in this chart, the exemplary Accused Instrumentalities practice the technology claimed by the '766 Patent. Accordingly, the exemplary Accused Instrumentalities incorporated in this chart satisfy all elements of the exemplary '766 Patent Claims.

36.     Plaintiff therefore incorporates by reference in its allegations herein the claim chart of Exhibit B.

37.     Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

38.     Defendant's actions complained of herein will continue unless Defendant is enjoined by this court.

39.     Defendant's actions complained of herein are causing irreparable harm and monetary damage to Plaintiff and will continue to do so unless and until Defendant is enjoined and restrained by this Court.

40.     Plaintiff is in compliance with 35 U.S.C. § 287.

## DEMAND FOR JURY TRIAL

41.     Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks the Court to:

(a)     Enter judgment for Plaintiff on this Complaint on all causes of action asserted herein;

(b)     Enter an Order enjoining Defendant, its agents, officers, servants, employees, attorneys, and all persons in active concert or participation with Defendant who receive notice of

the order from further infringement of United States Patent No. 8,521,766 (or, in the alternative, awarding Plaintiff running royalties from the time of judgment going forward);

      (c)     Award Plaintiff damages resulting from Defendant's infringement in accordance with 35 U.S.C. § 284;

      (d)     Award Plaintiff pre-judgment and post-judgment interest and costs; and

      (e)     Award Plaintiff such further relief to which the Court finds Plaintiff entitled under law or equity.

Dated:  February 22, 2024

Respectfully Submitted,

*/s/ Randall Garteiser*
Randall Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
M. Scott Fuller
  Texas Bar No. 24036607
  sfuller@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

René A. Vazquez
  Virginia Bar No. 41988
  rvazquez@sinergialaw.com

**SINERGIA TECHNOLOGY LAW GROUP, PLLC**
18296 St. Georges Ct.
Leesburg, Virginia 20176
Telephone: (703) 89-2244

**COUNSEL FOR PLAINTIFF**